## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**MYRON THOMPSON**                                                      **PLAINTIFF**
**ADC #158313**

**v.**                          **No: 5:19-cv-00018 DPM-PSH**

**WENDY KELLY,** *et al.*                                              **DEFENDANTS**

### PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Myron Thompson, an inmate at the Arkansas Department of Correction's (ADC) Delta Regional Unit, filed this *pro se* civil rights complaint against ADC Director Wendy Kelley, Warden Darryl Golden, Deputy Warden Linda Dykes, and officers Percy Arnold and Tonda Spencer. Doc. No. 2. Thompson alleges that Spencer used excessive force against him during an incident which occurred on December 21, 2018. *Id.* at 5-6. He further alleges Spencer retaliated against him, and that Kelley, Golden, Dykes, and Arnold

were alerted about his complaints against Spencer but failed to take corrective action.  *Id.* at 6-7.

The defendants filed a motion for summary judgment, a brief in support, and a statement of facts claiming that Thompson had not exhausted his claims against them before he filed this lawsuit (Doc. Nos. 12-14).  Despite the Court's order notifying Thompson of his opportunity to file a response and statement of disputed facts, he did not do so.  Doc. No. 15.  Because Thompson failed to controvert the facts set forth in defendants' statement of undisputed facts, Doc. No. 14, those facts are deemed admitted. *See* Local Rule 56.1(c).  For the reasons described herein, the undersigned recommends the defendants' motion for summary judgment be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be

2

supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

The defendants argue that they are entitled to summary judgment because Thompson failed to exhaust his administrative remedies with respect to them before he filed this lawsuit. In support of their motion, the defendants submitted the ADC's grievance policy (Doc. No. 12-1); a declaration by Terri Grigsby, the ADC's Grievance Supervisor (Doc. No. 12-2); and a copy of Grievance DR-19-00018 (Doc. No. 12-3).

The PLRA requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. The PLRA's exhaustion requirement applies

to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy (AD 14-16), inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. Doc. No. 12-1 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form ("Step One") within 15 days after the occurrence of the incident. *Id*. at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 4. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance ("Step Two"). *Id*. at 8. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id*. at 10-11. A written decision or rejection of an appeal is the end of the grievance process. *Id*. at 12. According to the ADC's grievance

policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 13. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

Grigsby states in her declaration that she reviewed grievances submitted by Thompson and found that he filed one grievance relevant to his complaint allegations: Grievance DE-19-00018. Doc. No. 12-2 at 1. Thompson submitted DR-19-00018 as a Step One grievance on December 24, 2018. Doc. No. 12-3 at 6. Thompson grieved:

> On 12-24-2018[1] @ approx. 10:51 pm I was in 3 BKS when LT Spencer come in and approached me Regarding wearing my Field jacket in the Day Room & Advised me to go upstairs in which I complied And proceeded by asking "why are you messing with me when I just wrote a grievance on you" LT Spencer Replied I'm tired of your Shit catch the cuffs I protested by Stating I Havent done anything this is Retaliation I want to note I was in no way being aggressive towards LT Spencer only trying to avoid her I turned my Back & Stated I need to Speak to a Captain or major She then pulled the tazor Stating Imma Knock your ass out So I ran She then Deployed the tazor #(C21035HK) with my Back turned for no other reason than Failure to obey written or verbal orders of staff, which cameras can verify this [illegible].

*Id.* Thompson proceeded to Step Two on January 4, 2019, stating his complaint was not resolved during Step One because "I did not recieve a response in a timely manner." *Id.* The grievance was rejected on January 7, 2019, as untimely. *Id.* at 5. Thompson appealed to the Deputy Director, stating:

> I did not receive the response on the original grievance from Sgt. Brown that I gave to him on the 24th day of December 2018 and yet to he still has the original white copy he stated to me that I wouldn't get a response until after the holidays but never came back with a response.

---

[1] Thompson's complaint states that the incident described in DE-19-00018 occurred on December 21, 2018. Doc. No. 2 at 5.

*Id.* at 4.  Thompson's appeal was rejected because he did not attach a copy of the grievance form.  *Id.* at 1.

Thompson's grievance was not exhausted because his Step Two submission was untimely.  Pursuant to the ADC grievance procedure, Thompson could proceed to Step Two after six working days if he did not receive a response.  Doc. No. 12-1 at 7-8.  Working days include every weekday Monday through Friday, excluding holidays.  *Id.* at 2.  Excluding holidays and weekends, the last day Thompson could have timely submitted his Step Two grievance form was January 3, 2019.  Doc. No. 12-2 at 3.  Because Thompson proceeded to Step Two on January 4, 2019, his grievance was correctly rejected as untimely.  Additionally, his appeal to the Deputy Director was correctly rejected because he did not return the original grievance form which is required by procedure.[2]  Because he failed to follow ADC procedure, his grievance was rejected and does not serve to exhaust his claims.

Furthermore, even if Thompson timely submitted DE-19-00018 as a Step Two grievance, it could not serve to exhaust Thompson's claims against the defendants who were not named in the grievance.  The ADC grievance policy requires inmates to name each individual involved.  *See* Doc. No. 12-1 at 5-6.  A plaintiff's failure to name a defendant in a grievance may not prevent exhaustion if prison officials have enough

---

[2] Doc. No. 12-1 at 11.  Even if Thompson did not receive the original white form back from the problem solver, he should have the yellow or pink copies of his original grievance.  *See id.* at 6.

information to adequately investigate the grievance, do so, and decide the grievance on the merits.[3]  Thompson only named and described the actions of Spencer in DE-19-00018.[4] Thompson did not name Kelley, Golden, Dykes, or Arnold in this grievance and did not describe his allegation that they or anyone else failed to take corrective action.[5] Accordingly, DE-19-00018 could not serve to exhaust Thompson's administrative remedies with respect to Kelley, Golden, Dykes, or Arnold in any case.

---

[3] *See e.g., Chapman v. Norris*, No. 5:15CV00103-DPM-JTK, 2016 WL 4483862, at *4 (E.D. Ark. Apr. 19, 2016), *report and recommendation adopted in part, rejected in part sub nom. Chapman v. Gibson*, No. 5:15-CV-103-DPM-JTK, 2016 WL 4483849 (E.D. Ark. Aug. 24, 2016); *Rodriguez v. Page,* No. 1:15CV00022 BSM/PSH, 2016 WL 4473818, at *2–3 (E.D. Ark. Aug. 9, 2016), *report and recommendation adopted,* No. 1:15CV00022 BSM, 2016 WL 4472960 (E.D. Ark. Aug. 23, 2016); *Wilson v. Arkansas Dep't of Correction*, No. 5:14CV00248 SWW/PSH, 2016 WL 1626770, at *3 (E.D. Ark. Mar. 30, 2016), *report and recommendation adopted,* No. 5:14CV00248 SWW, 2016 WL 1611443 (E.D. Ark. Apr. 21, 2016); *Daniels v. Hubbard, supra*.

[4] In *Burns v. Eaton*, the Court affirmed the dismissal of a claim against a defendant who was not named in the grievance and whose conduct was not addressed in the grievance.  752 F.3d 1136 (8th Cir. 2014).  However, the relevant grievance specifically named another individual, and was therefore proper under ADC policy.  *Id.* at 1141-1142.  Prison officials were able to investigate the conduct of the named individual, and had no reason to question whether other individuals or claims should have been investigated.  *Id.*

[5] The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997).  To establish liability against a defendant in a supervisory role, an inmate must prove that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts.  *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).  *See also Waller v. Kelley*, 956 F. Supp. 2d 1007, 1013–14 (E.D. Ark. 2013) ("Plaintiff fully exhausted several grievances raising his *inadequate medical care claim* against *some* of the named medical Defendants. . . . However, *none* of his grievances mention the *corrective action claim* that he is asserting against Defendant Kelley. Thus, his grievances did *not* put ADC officials on notice that he thought Defendant Kelley was failing to properly review or respond to his medical grievance appeals or was otherwise failing to take appropriate corrective action regarding the medical care he was receiving from the other Defendants.") (emphasis in original).

## IV.  Conclusion

Thompson did not exhaust his administrative remedies with respect to his claims against the defendants.  The defendants' motion for summary judgment (Doc. No. 12) should be granted, and Thompson's claims should be dismissed without prejudice.

DATED this 19th day of July, 2019.

_____

UNITED STATES MAGISTRATE JUDGE